1

2

3

4

5

6

7                      IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11   EDWARD R. WEBB,

12                 Plaintiff,                    No. 2:11-cv-3464 AC P

13          vs.

14   CALIFORNIA DEPT. of                         ORDER and
     CORRECTIONS, et al.,
15                 Defendant.                    FINDINGS & RECOMMENDATIONS

16   _____/

17          Plaintiff, a former state prisoner[1], proceeds pro se and in forma pauperis on his

18   complaint for relief filed pursuant to 42 U.S.C. § 1983.  The action proceeds on plaintiff's Eighth

19   Amendment claims against defendant Dr. Wong only, as outlined in this court's Order filed

20   April 12, 2012.  ECF No. 6.

21          Defendant has moved to dismiss the complaint, for failure to exhaust and for

22   failure to state a claim upon which relief can be granted.  Plaintiff has not filed an opposition or

23   any other response to the motion.  For the reasons given below, the undersigned recommends

24

25          [1]  At the time plaintiff filed this action, he was incarcerated at Deuel Vocational Institute
     (DVI).  By letter dated November 9, 2012, plaintiff advised the court that he would be released
26   from prison on November 15, 2012.  ECF No. 15.

                                                 1

1   that defendant's motion to dismiss the complaint for failure to exhaust be granted, and that this

2   action be dismissed without prejudice.

3                          **BACKGROUND**

4           Plaintiff alleges that he was injured when he fell down a flight of stairs at

5   Stanislaus County Jail in October 2010 and that he was under a doctor's care for his injuries

6   when he was transferred to Duell Vocational Institute ("DVI") on May 4, 2011.  See ECF No. 1,

7   Complaint, at 4.[2]  Plaintiff alleges that he signed a medical release in order to continue receiving

8   medical care at DVI, but that defendant Dr. Wong denied him appropriate medical treatment.

9   Specifically, plaintiff alleges Dr. Wong: (1) failed to request or review plaintiff's prior medical

10  records, and (2) denied plaintiff an MRI.  Plaintiff alleges that he sought the MRI "because

11  Doctor Wong said I could not prove I had these injures [sic]."  Id.  Plaintiff further alleges that,

12  after he filed inmate appeals and complaint letters with the Inspector General, the California

13  Medical Board, and the Chief Medical Officer at the prison, Dr. Wong retaliated against him by

14  "making retaliatory egregious decisions as to my treatment," fabricating statements in plaintiff's

15  medical file, and referring plaintiff to a psychiatrist.  Id. at 3, 4.

16           Plaintiff additionally alleges that he has a learning disability, and has been

17  granted an ADA[3] assistant; however, both he and his assistant have been "stonewalled" and

18  "frustrated at every turn" by the inmate appeals process.  Id. at 4, 5.

19           On April 12, 2012, the court granted plaintiff's motion to proceed in forma

20  pauperis, and dismissed plaintiff's complaint with leave to amend.  ECF No. 6.  The court found

21  that the complaint stated a colorable Eighth Amendment claim against Dr. Wong only.  Id.  In

22  granting leave to amend, the court specifically advised plaintiff that, should he fail to file an

23  amended complaint, the action would proceed solely against Dr. Wong on the Eighth

24       [2] Page numbers given are those assigned by the court's Electronic Case Filing ("ECF")

25  system.

26       [3] Americans With Disabilities Act.

1   Amendment claims.  Id. at 8.

2         The court additionally noted that, on the face of the Complaint, it appeared that

3   plaintiff had not exhausted his administrative remedies:

> In this case, though, the Complaint reads that there is a grievance
> procedure at plaintiff's institution, that he has file a grievance, but
> that the grievance procedure is not completed.  See Doc. No. 1 at
> 2, "Exhaustion of Administrative remedies."  Also in his
> Complaint, plaintiff generally claims that he is being stonewalled
> and smothered in paperwork, and that attempts by his A.D.A.
> assistant to obtain information have been ignored, returned, or
> refused.  Id. at 4.  He has additionally alleged that defendant Dr.
> Wong retaliated against him for filing grievances.
>
> Accordingly, the Complaint on its face indicates that plaintiff may
> not have satisfied the requirements of 42 U.S.C. § 1997e(a) and
> that plaintiff may be trying to excuse his compliance.  See Wyatt v.
> Terhune, 315 F.3d at 1120 (prisoner's concession to non-
> exhaustion is a valid ground for dismissal so long as no exception
> to exhaustion applies). . . .  [B]ecause the court is dismissing this
> complaint with leave to amend, the plaintiff has an opportunity in
> the amended complaint, if he so chooses, to articulate whether he
> has exhausted his claims, and if not, why not.

14   Order, ECF No. 6 at 5.

15         On June 14, 2012, after plaintiff failed to file an amended complaint, the court

16   ordered service on defendant Wong, and dismissed all remaining defendants.  ECF Nos. 9, 10.

17   On November 6, 2011, defendant filed the instant motion to dismiss.  ECF No. 14.  On

18   November 15, 2012, plaintiff filed a "Motion to Stay and Notice," advising the court that he had

19   been released from prison, and seeking a four month stay of proceedings in order to allow him,

20   among other things, to hire an attorney.  ECF No. 15.  By order filed November 26, 2012, the

21   court construed plaintiff's motion as one seeking an extension of time to respond to the motion

22   to dismiss, and granted plaintiff an additional 60 days in which to file his response.  ECF No. 17.

23   To date, plaintiff has filed no opposition or other response to the motion to dismiss.

24         **DEFENDANT'S MOTION TO DISMISS**

25         Defendant Wong moves to dismiss the complaint, arguing that (1) plaintiff has

26   failed to exhaust his administrative remedies, as he is required to do under 42 U.S.C. § 1997e(a),

1    and (2) plaintiff fails to state a claim upon which relief can be granted, pursuant to Federal Rule

2    of Civil Procedure 12(b)(6).

3    _*Exhaustion*_

4    Relevant Authority

5    Congress "placed a series of controls on prisoner suits, constraints designed to

6    prevent sportive filings in federal court." Skinner v. Switzer, __ U.S. __, 131 S.Ct. 1289, 1299

7    (2011). One of these constraints is the mandatory exhaustion of the correctional facilities'

8    administrative remedies. See 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007)

9    ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted

10   claims cannot be brought in court.").

11   Exhaustion serves two purposes. Woodford v. Ngo, 548 U.S. 81, 89 (2006).

12   First, exhaustion protects administrative agency authority. Exhaustion gives an agency an

13   opportunity to correct its own mistakes with respect to the programs it administers before it is

14   haled into federal court, and it discourages disregard of the agency's procedures. Second,

15   exhaustion promotes efficiency. Claims generally can be resolved much more quickly and

16   economically in proceedings before an agency than in litigation in federal court. Id.

17   The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action

18   shall be brought with respect to prison conditions under section 1983 . . . or any other Federal

19   law, by a prisoner confined in any jail, prison, or other correctional facility until such

20   administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

21   Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life,"

22   Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is

23   not absolute. See Albino v. Baca, 697 F.3d 1023, 1030-31 (9th Cir. 2012). As explicitly stated

24   in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies

25   'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. §

26   1997e(a)); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that

4

1  rational inmates cannot be expected to use are not capable of accomplishing their purposes and

2  so are not available."). "We have recognized that the PLRA therefore does not require

3  exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp,

4  623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935

5  (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as *some* remedy

6  remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,'

7  and the prisoner need not further pursue the grievance.").

8          Exhaustion, under the PLRA, is an affirmative defense. Jones, 549 U.S. at 216.

9  Accordingly, "[t]he burden of establishing nonexhaustion therefore falls on defendants." Wyatt,

10  315 F.3d 1108, 1112 (9th Cir. 2003); accord Brown, 422 F.3d at 936 ("[D]efendants have the

11  burden of raising and proving the absence of exhaustion.") (quoting Wyatt, 315 F.3d at 1119)

12  (internal quotation marks omitted). Once the defense meets its burden, the burden shifts to the

13  plaintiff to show that the administrative remedies were unavailable. See Albino, 697 F.3d at

14  1030-31; Hilao v. Estate of Marcos, 103 F.3d 767, 778 n. 5 (9th Cir. 1996).

15          A defendant's burden of establishing an inmate's failure to exhaust is very low.

16  See Albino, 697 F.3d at 1031. A defendant need only show the existence of remedies that the

17  plaintiff did not use. Id. Relevant evidence may include statutes, regulations, and other official

18  directives that explain the scope of the administrative review process. Id. at 1032.

19          The relevant regulations in effect in 2010 and 2011 required that an inmate

20  present his or her allegations initially at a first and second level of internal prison administrative

21  review. Cal. Code Regs. tit. 15, § 3084.7(a)-(b). If dissatisfied, the inmate was generally

22  required to pursue a third level of appeal. Id. at § 3084.7(c). A decision of the Secretary of the

23  California Department of Corrections and Rehabilitation ("CDCR") satisfied the requirement for

24  third level review and generally exhausts administrative remedies. Id.

25          However, an appeal could be screened out and rejected or cancelled at any level if

26  it failed to comply with Title 15's requirements. See Cal. Code Regs. tit. 15, §§ 3084.6(b)-(c).

1   For example, CDCR's regulations require the inmate to describe the specific issue under appeal,

2   submit one issue per appeal, list all staff members involved, and state all the facts available to

3   the inmate when the appeal was submitted.  See Cal. Code Regs. tit. 15, §§ 3084.2(a)(1)-(4).

4   Also, the inmate had to file the appeal timely, within either 15 or 30 days after the alleged

5   incident.  See Cal. Code Regs. tit. 15, §§ 3084.6(c), 3084.8(b)(1) (30 day time limit effective Jan.

6   28, 2011).

7          A plaintiff seeking to demonstrate the unavailability of administrative remedies

8   may do so in several ways.  Affirmative actions by jail or prison staff preventing proper

9   exhaustion, even if done innocently, can make administrative remedies effectively unavailable.

10  Id. at 1034.  For example, improper screening of an inmate's administrative grievances renders

11  administrative remedies effectively unavailable such that exhaustion is not required under the

12  PLRA.  Sapp, 623 F.3d at 823.  To fall within this exception, a prisoner must show that he

13  attempted to exhaust his administrative remedies but was thwarted by improper screening.  Id.

14  See also Nunez, 591 F.3d 1217 (inmate's untimely exhaustion excused where inmate took

15  "reasonable and appropriate steps to exhaust . . . and was precluded from exhausting . . . by the

16  Warden's mistake").

17         In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the

18  court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at

19  1119-20.  No presumption of truthfulness attaches to a plaintiff's assertions associated with the

20  exhaustion requirement.  See Ritza v. Int'l Longshoremen's and Warehousemen's Union, 837

21  F.2d 365, 369 (9th Cir. 1988).   If the district court concludes that the prisoner has not exhausted

22  nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.  Id.

23         Defendant's Evidence

24         Defendant submits two declarations in support of his motion, both accompanied

25  by exhibits that document the inmate appeals they describe.  The first declarant is L. Zamora,

26  Chief of the Inmate Correspondence and Appeals Branch (ICAB).  Decl. Of L. Zamora, ECF No.

1    14-2 ("Zamora Decl."), ¶ 1.   The ICAB receives and maintains all health care appeals for third

2    level review, which the third and final level of review, in the inmate health care appeals process,

3    and renders decisions on such appeals.  Id. at ¶ 3.  The second declarant is C. Baca, a Healthcare

4    Appeals Coordinator at Deuel Vocational Institution (DVI).  Decl. Of C. Baca, ECF No. 14-3

5    ("Baca Decl."), ¶ 1.  Declarant Baca's duties include maintaining records of all logged

6    healthcare appeals, and maintaining a database of all medical appeals that have been screened

7    out for failure to comply with proper procedures.  Id. at 2.

8              According to declarants, plaintiff has submitted a total of eight grievances

9    regarding Dr. Wong's deficient medical treatment or denial of an MRI at DVI: one at the Third

10    Level, and seven at the First Level.  Zamora Decl., ¶ 5; Baca Decl., ¶ 3.  Specifically:

11              (1) On June 15, 2011, plaintiff filed a Third Level Appeal

12              ("Appeal One") complaining that he had not received any pain

13              management or medical appliances, and requested a wheelchair

14              and accommodation under the Americans with Disabilities Act.

15              The appeal was screened out on June 15, 2011 because it had not

16              yet been submitted at the First or Second Level (Zamora Decl. ¶

17              7);

18              (2) On June 23, 2011, plaintiff filed a First Level Appeal ("Appeal Two")

19              requesting a Hepatitis C and diabetes evaluation, a high protein diet, and fat

20              burning medication.  The appeal was partially granted on July 15, 2011, and

21              plaintiff did not appeal this decision to the Second Level (Baca Decl., ¶ 5);

22              (3) On July 11, 2011, plaintiff filed a First Level Appeal ("Appeal

23              Three") complaining that Dr. Wong had not reviewed plaintiff's

24              medical records, had denied plaintiff an MRI for budgetary

25              reasons, and had failed to treat plaintiff's injury or his Hepatitis C.

26              This complaint was screened out on July 13, 2011 because it

7

1  involved multiple issues and was submitted on an improper form.

2  Plaintiff was advised to use the correct forms, and to split his three

3  issues onto three separate appeals (Baca Decl., ¶ 6)

4  (4) On July 28, 2011[4], plaintiff filed a First Level Appeal ("Appeal

5  Four") claiming that Dr. Wong had discontinued plaintiff's pain

6  medication and had sent him to physical therapy.  The appeal was

7  partially granted on September 9, 2011, and plaintiff did not take

8  any appeal of the decision to the Second Level (Baca Decl., ¶ 7);

9  (5) On August 5, 2011, plaintiff filed a First Level Appeal

10  ("Appeal Five") complaining, among other things, that Dr. Wong

11  had discontinued plaintiff's pain medication and had refused his

12  MRI for budget reasons.  The appeal was screened out on August

13  15, 2011 because it was submitted on improper forms, and because

14  plaintiff had exceeded the limit for non-emergency appeals within

15  a 14-day period.  The rejection includes instructions for re-

16  submission of the form, and the procedure by which plaintiff may

17  challenge the ruling (Baca Decl., ¶ 8);

18  (6) On August 8, 2011, plaintiff filed a First Level Appeal

19  ("Appeal Six") complaining that Dr. Wong had not reviewed

20  plaintiff's prior medical records, and requested a wheelchair and

21  accommodation under the ADA.  The appeal was screened out on

22  September 9, 2011, because it concerned an anticipatory action,

23  and because it was untimely.  The rejection included instructions

24

25      [4]  The Baca Declaration gives the date of this appeal as June 28, 2011; however, the copy
of the appeal attached to the declaration is stamped received on July 28, 2011.  ECF No. 14-3 at
26  24, 26.  The difference is not material to the exhaustion analysis.

1    by which plaintiff may dispute the ruling (Baca Decl., ¶ 9);

2    (7) On August 23, 2011, plaintiff filed a First Level Appeal

3    ("Appeal Seven"), prepared by an ADA clerk on plaintiff's behalf,

4    which was cancelled because it duplicated Appeal Four.  The

5    rejection included instructions for appealing the decision (Baca

6    Decl., ¶ 10); and

7    (8) On August 23, 2011, plaintiff filed a First Level Appeal

8    ("Appeal Eight") which was identical to Appeal Seven, except

9    that, in Appeal Eight, plaintiff sought emergency review.  The

10   appeal was cancelled because it too was identical to Appeal Four.

11   The rejection included instructions for appealing the decision

12   (Baca Decl., ¶ 11).

13          Defendant argues that plaintiff has failed to exhaust his administrative remedies,

14   because he either failed to follow prison regulations, or failed to appeal a denial to the Second

15   and Third Level.  Memorandum of Points and Authorities, ECF No. 14-1, at 3.  In addition,

16   defendant notes that plaintiff had access to an ADA clerk who assisted plaintiff in preparing

17   appeals, and that staff established effective communication with plaintiff, and provided clear

18   instructions about how to appeal and/or correct a deficiency.  Id. at 6.  Defendant further notes

19   that plaintiff did not amend his complaint or otherwise provide any explanation on how plaintiff

20   was prevented from exhausting his administrative remedies.  Id.

21          Plaintiff's Evidence

22          Plaintiff has not filed any opposition or other response to the motion.

23          In his Complaint, plaintiff alleged

24          I then began to utilize the inmate appeal process and sent letters to
            the inspector generals' office, the California Medical Board, and
25          the Chief Medical officer here at DVI asking for help because I
            was suffering in such great pain.  Because of my life-long leaning
26          disability for which I am declared A.D.A. by the C.D.C.R. I was

9

1    unable to understand the inmate appeals process to any affect.

2    I now realize I am being "stonewalled" deliberately and smothered
     in paperwork I don't understand.  I then requested of the C.D.C.R.
3    an assistant under the Armstrong Act to help me with this process
     and my request was granted but every attempt made by my A.D.A.
4    assistant to obtain information through the "Health Care inmate
     Appeals Process" was ignored, returned, or refused by the Health
5    Care appeals Coordinator. . . .

6    Complaint, ECF No. 1 at 4-5.

7    The final paragraph of plaintiff's statement reads:

8    My name is Eric Taylor C-69872 and I am the inmate A.D.A. clerk
     here at Deuel Vocational Institution.  I have been doing what I can
9    for MR. Webb since he comes to my attention.  (Inmate Webb
     has a learning disability) I have in fact been very frustrated at
10   every turn when it comes to the appeals process concerning Mr.
     Webb and in fact worry about going any further, although
11   retaliation is not allowed it does happen quit [sic] often.

12   Id. at 5.

13   Analysis

14          In this case, defendant has met his burden to show that plaintiff failed to exhaust

15   his available administrative remedies.  The affidavits of C. Baca and L. Zamora establish that (1)

16   plaintiff filed seven First Level Appeals regarding the subject of the complaint, none of which he

17   pursued past the First Level, and (2) plaintiff's sole Third Level Appeal was rejected because

18   plaintiff had not first sought review at the First and Second Levels.  See Zamora Decl.; Baca

19   Decl.

20          Plaintiff does not dispute that he did not file any appeals of the First Level review

21   rejections or denials, or that his sole Third Level Review was properly rejected.  He does,

22   however, appear to seek to excuse his non-compliance by alleging generally that he was

23   stonewalled, that he has a learning disability, and that he may be subject to retaliation for using

24   the administrative appeals process.

25          Plaintiff's allegations are both factually unsupported and inadequate to

26   demonstrate the unavailability of administrative remedies.   His vague and conclusory

10

1    allegations that he was stonewalled, that his requests were "ignored, returned, or refused," or that

2    use of the process may subject him to retaliation, do not provide the court with the requisite

3    factual basis on which to determine whether administrative remedies were unavailable. <u>Cf.</u>

4    <u>Sapp</u>, 623 F.3d at 823 (improper screening renders remedies effectively unavailable).

5         The PLRA requires "[p]roper exhaustion," which "demands compliance with an

6    agency's deadlines and other critical procedural rules." <u>Woodford</u>, 548 U.S. at 90-91. "[F]iling

7    an untimely or otherwise procedurally defective administrative grievance or appeal" does not

8    satisfy the PLRA's exhaustion requirement. <u>Id.</u> at 84. In this instance, the record reflects that

9    plaintiff has failed to meet these requirements. Accordingly, the undersigned recommends that

10    the complaint be dismissed without prejudice.

11         Because the undersigned finds that plaintiff failed to exhaust his administrative

12    remedies, the undersigned makes no findings on defendant's alternate ground for dismissal under

13    Rule 12(b)(6).

14                    **No Evidentiary Hearing is Necessary**

15         In this case, the undersigned makes no assessment of plaintiff's credibility, or of

16    that of his witnesses, and so will not conduct an evidentiary hearing. <u>Cf</u>. <u>Hubbard v. Houghland</u>,

17    471 Fed. Appx. 625 (9th Cir. Mar.7, 2012). Instead, the undersigned recommends dismissal

18    based on the undisputed facts before the court, including that plaintiff failed to prosecute his

19    administrative remedies through all available levels. Moreover, as noted above, plaintiff's vague

20    and conclusory allegations, taken as true, are insufficient to meet his burden that administrative

21    remedies were not available to him.

22         In accordance with the above, IT IS HEREBY ORDERED that the Clerk assign a

23    district judge to this action.

24         IT IS HEREBY RECOMMENDED that

25         1. Defendant's motion to dismiss, filed November 6, 2012 (Doc. No. 14), be

26    granted; and

2.  This action be dismissed with prejudice for failure to exhaust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight (28) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within twenty-eight (28) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 17, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb
webb3464.fr

12